1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Castillo, o/b/o Christina Kasprick, deceased,<br><br>      Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>      Defendant. | No. CV 08-01223-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's request for social security disability benefits. For the reasons that follow, the Court affirms the ALJ's decision to deny social security disability benefits.

**I.    PROCEDURAL HISTORY**

On February 17, 2006, Plaintiff filed an application for Supplemental Security Income benefits, alleging a disability onset date of April 1, 2003. (Record Transcript "Tr." 46.) Plaintiff asserts that she is disabled due to, *inter alia*, fibromyalgia, lumbar scoliosis, cervicalgia, myofascial pain, and depression. (*Id.* at 138, 145, 281.) The Social Security Administration ("SSA") denied Plaintiff's application and request for reconsideration. (*Id.* at 37-45.) Plaintiff timely requested and received a hearing before an ALJ. (Tr. 296-321.)

On December 7, 2007, the ALJ denied Plaintiff's request for benefits, finding that, despite Plaintiff's restrictions, she still retained the residual functional capacity to engage in substantially gainful activity. (*Id.* at 13-23.) On May 9, 2008, the Appeals Council denied Plaintiff's request for review and adopted the decision of the ALJ as the final decision of the Commissioner. (*Id.* at 4-6.) Plaintiff filed this complaint on July 2, 2008, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision. (Doc. # 1.)

**II.  STANDARD OF REVIEW**

The Court will not set aside the Commissioner's decision unless: (1) the findings of fact are not supported by substantial evidence in the record, or (2) the decision is based on a legal error. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). *See also Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) ("Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."). In determining whether substantial evidence supports the Commissioner's decision, the court must consider the record as a whole and review evidence both supporting and detracting from the decision. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The ALJ's role is to make credibility determinations and to resolve conflicts in medical testimony. *Andrews*, 53 F.3d at 1039. If the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, then the court will uphold the decision. *Id.* at 1040. However, if the ALJ applied improper legal standards, the court must set aside a decision even if it is supported by substantial evidence. *See Ceguerra v. Sec'y of Health & Human Servs.*, 993 F.2d 735, 739 (9th Cir. 1991).

The claimant bears the initial burden to prove that he qualifies for disability benefits under the Social Security Act. *Andrews*, 53 F.3d at 1040. A claimant is disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

Pursuant to 20 C.F.R. § 416.920, the ALJ must perform a five-step analysis to determine whether a claimant is disabled. The questions are posed sequentially until a finding of disability is affirmatively rejected or established. An applicant establishes a prima facie case of disability if he proves the first four of the following five steps: (1) applicant is not currently engaged in "substantial gainful activity"; (2) applicant has a "medically severe impairment or combination of impairments"; (3) applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledged as so severe as to preclude the applicant from engaging in substantial gainful activity; (4) if the applicant's impairment does not equal one of the "listed impairments," applicant is incapable of performing his or her past relevant work; and (5) applicant is unable to perform other work in the national economy considering his or her age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. § 404.1520(b)-(f)). In analyzing step five, the burden shifts to the Commissioner. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)). *See also* 20 C.F.R. § 416.920(f). "If the Commissioner meets his burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955.

### III. FACTUAL BACKGROUND

#### A. Plaintiff's Disability Claim

Plaintiff claims that she has been unable to work since April 1, 2003. (Tr. 46.) She alleges that she is disabled due to fibromyalgia, lumbar scoliosis, cervicalgia, myofascial pain, and depression. (*Id.* at 138, 145, 281.)

#### B. Plaintiff's Background

Plaintiff was born on February 26, 1968, stands at 5 feet, 6 inches tall, and weighs 242 pounds. (Tr. 46, 99.) She lived with her fiancé and three of her children. (*Id.* at 68.) She

1 had completed school up to the eleventh grade. (*Id*. at 106.) Plaintiff worked as a fast food cashier for the 1987 year, a delivery driver for a photo lab for the 1993 year, again as a fast food cashier from January to April of 2003, and finally creating movie posters from May to July of 2003. (*Id*. at 101.)

On November 7, 2007, Plaintiff testified to the ALJ regarding her alleged disabling conditions. (*Id*. at 296-321.) Plaintiff testified that she was unable to work because she had panic attacks when around the public and she was depressed. (*Id*. at 301, 312.) Plaintiff also testified that she had pain all of the time in her back, neck, right arm and right knee in addition to no feeling in both of her legs. (*Id*. at 301-02.) Plaintiff described her average daily pain as a 9 to 10 on a scale of 1 to 10, with a 10 representing pain that would send her to the hospital. (*Id*. at 303.) Plaintiff testified that she almost had to crawl home after walking her children to the school bus stop every morning. (*Id*. at 304). Plaintiff testified that walking aggravated her symptoms, and that neither sitting nor standing nor lying down helped. Plaintiff testified that she was unable to lift five (5) pounds and had problems with postural movements, manipulation and using her arms overhead. (*Id*. at 305-06.) Plaintiff testified her hands went numb every time she used them. (*Id*. at 306.) She further testified that she had memory and concentration problems. (*Id*. at 309). Plaintiff took medication for symptom relief. (*Id*. at 307-08.) Plaintiff claimed she only did dishes to help with housework, but everything else she largely relied on her children. (*Id*. at 310).

**C.  Record Evidence**

**1.  Physical and Mental Impairments**

Treatment records from Albert Yeh, M.D., showed that beginning August 2005, Plaintiff subjectively reported that she had numbness and all over body pain rated as an 8 to 10 on a scale of 1 to 10, and she received medication management and trigger point injections for her pain complaints. (Tr. 137-85, 271-84.) X-rays of Plaintiff's lumbar spine showed "mild" degenerative changes, and also showed that Plaintiff's cervical and thoracic spine were normal. (*Id*. at 178-85.) Dr. Yeh diagnosed myofascial pain and scoliosis. (*Id*. at 138.) On examination, Dr. Yeh at times noted Plaintiff's complaints of pain and

tenderness, lower extremity numbness and unspecified decreased ranges of motion; but Dr. Yeh also documented that Plaintiff had no muscle atrophy, no weakness, no pain with straight leg raising (negative SLR), no radicular signs, as well as normal sensation and reflexes. (*Id.* at 137-39, 141, 143-45, 147, 150, 154, 156, 158, 160, 163, 165, 168, 170, 175, 271, 273, 275, 277, 280, 283.) Dr. Yeh noted in some treatment records that medication was helping to improve Plaintiff's function and quality of life (*Id.* at 148, 151, 155, 161, 163, 166, 174, 272, 274), but sometimes inconsistently reported in the same treatment records that Plaintiff was not improving. (*Id.* at 168, 171, 176, 276, 278, 281, 283.)

On January 16, 2006, Plaintiff went to Mohave Mental Health Clinic ("MMHC") because she felt stressed over her relationship with her daughter (*Id.* at 211.) The interviewing therapist described Plaintiff as depressed, but also calm, cooperative, logical and fully oriented. (*Id.* at 216-17.) The therapist did not perform memory testing. (*Id.* at 217.) The therapist diagnosed a parent-child relational problem and stated that depression needed to be ruled out. (*Id.* at 218.) The therapist assessed a Global Assessment of Functioning (GAF)[1] score of 55. (*Id.* at 219.)

On May 2, 2006, Dr. Yeh opined that Plaintiff had several physical limitations, which would have limited her to sedentary to light work activity, with additional extreme manipulative, postural and environmental restrictions. (*Id.* at 285-87.)

On June 5, 2006, Plaintiff underwent a consultative mental status examination by Lawrence Allen, Ph.D., for complaints of depression and anxiety. (Tr. 236.) Plaintiff stated that she wanted to avoid people. Plaintiff also reported that she lived with her fiancé, who is on disability, spent her days in bed, and that her 11 year old child prepared the family's meals. (*Id.* at 237.) On mental status examination, Dr. Allen described Plaintiff as well

---

[1]GAF represents the examiner's judgment of the individual's overall level of psychological functioning. *See DSM-IV* at 32. A person's GAF score is based on a numerical rating ranging between 0 and 100, with lower numbers representing more severe mental limitations. *DSM-IV* at 32, 34. A rating of 51-60 indicates moderate symptoms. *Id.* at 34.

1  groomed and having no unusual mannerisms. Plaintiff was mildly suspicious, but friendly.
2  She was passively cooperative with good eye contact. Plaintiff had full range of effect.
3  Plaintiff answered questions but did not have spontaneous conversation. Plaintiff was fully
4  oriented. (*Id.* at 239.) Dr. Allen described Plaintiff's difficulty with immediate recall as
5  "symptom amplification" because she "had no difficulty in describing her background and
6  had immediate memory for facts and other information during the interview." (*Id.*) Dr. Allen
7  also noted "some symptom magnification" when Plaintiff performed serial seven testing and
8  was asked to spell the word "world" backwards. Dr. Allen diagnosed social phobia with
9  panic and depressive disorders to be ruled out. Dr. Allen assessed a GAF score of 80.[2] Dr.
10 Allen opined that there was no evidence of a limitation in 18 of 20 mental work related
11 activities, and was not significantly limited in the remaining 2 (social interaction with the
12 public and completing a work day or work without interruption). (*Id.* at 241-45.)

13 On June 17, 2006, Plaintiff underwent a consultative physical examination for
14 complaints of back pain and restless leg syndrome by Jason Taylor, M.D. (*Id.* at 188.)
15 Plaintiff reported that trigger point injections that Dr. Yeh administered were helping her
16 symptoms. (*Id.* at 191.) Plaintiff lived with her fiancé and three children, and her 11 year old
17 daughter did most of the housework. (*Id.* at 188.) On examination, Dr. Taylor stated that
18 Plaintiff "does not appear to be in any distress during our conversation or during the
19 examination," and that while she had some difficulty taking off her shoes, she was able to
20 get on and off the examination table without difficulty and was "somewhat dramatic during
21 portions of the examination." (Tr. 189.) Dr. Taylor noted that except for her lumbar spine,
22 Plaintiff had normal ranges of motion in all other joints and she had no pain with straight leg
23 raising. (*Id.* at 190.) Plaintiff could squat and rise without significant difficulty. Plaintiff had
24 normal (5/5) grip strength and flexibility in her knees and ankles. (*Id.* at 191.) Plaintiff had

---

[2]A GAF score of 80 suggests that if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). *See DSM-IV* at 32.

1 intact sensation and reflexes. Dr. Taylor limited Plaintiff to lifting up to 50 pounds occasionally, standing, sitting and walking up to 8 hours each, and performing certain postural movements from occasionally to frequently. Dr. Taylor opined that Plaintiff had no upper extremity limitations. (*Id.* at 192.)

On June 6, 2006, physician's assistant Sharon O'Malley evaluated Plaintiff for complaints depression. (*Id.* at 198.) Plaintiff reported that she lived with her fiancé, who was on disability, and her children. (*Id.* at 201.) Plaintiff reported feeling stress over her daughter moving out. (*Id.* at 198.) On mental status evaluation, Plaintiff was alert, fully oriented and cooperative. (*Id.* at 201.) Plaintiff was depressed, but she also had good eye contact, normal speech and appropriate affect. (*Id.* at 202.) Plaintiff had average intelligence, good judgment, impulse control and fair insight. Ms. O'Malley stated that depressive disorder and panic disorder had to be ruled out, and she prescribed medication. (*Id.* at 202-04.)

On June 28, 2006, Donna DeFelice, M.D., reviewed the record and opined on a Psychiatric Review Technique form that Plaintiff had moderate restrictions in daily activities and concentration, persistence or pace, and a marked limitation in social functioning. (*Id.* at 122-35.) Dr. DeFelice also opined that Plaintiff retained the functional capacity to understand, remember and carry out simple mental tasks and could sustain concentration adequately at work that did not involve interacting closely with coworkers and the general public. (*Id.* at 117-20.)

On August 16, 2007, Plaintiff returned to MMHC. (*Id.* at 268.) Plaintiff was last seen at the clinic in May 2007, when Ms. O'Malley assessed Plaintiff with several moderate and marked limitations. (*Id.* at 268-70.) Plaintiff reported that she had made amends with her daughter. (*Id.* at 268.) Plaintiff was described as depressed and sometimes tearful, but she also was pleasant, cooperative, goal oriented and logical, and she had good eye contact and good impulse control. Plaintiff was prescribed medication. (Tr. 268.)

### 2. **Vocational Expert**

The Vocational Expert ("VE") testified regarding past work history and potential for future employment. (*Id.* at 315-21.) The ALJ first presented the VE with a hypothetical

person with the same age, work experience, and educational background as the claimant, with the ability to do work of medium exertional level with frequent climbing, bending, crouching, crawling and kneeling, minimal contact with the public, supervisors and co-workers, and of the low stress variety. (*Id.* at 316.) The ALJ added that because of the earnings reported, they would skip to step five and not consider the past work for purposes of the hypotheticals and asked for hypothetical one what unskilled work would be available for that individual. (*Id.*)

The VE estimated that there are 20,000 janitorial positions in Arizona and one million in the United States. (*Id.* at 316-17.) The VE further estimated at the light level, for the same position, there are 4,500 available in Arizona and 234,000 in the United States. (*Id.* at 317.) The VE stated these janitorial positions would include night cleaners or similar positions where there would be less contact with people. The VE also found work as an office clerk at the medium level with 280 such jobs in Arizona and 15,700 in the United States. (*Id.*) For office clerk at the light level, the VE found there are 3,000 such jobs available in Arizona and 173,000 in the United States. (*Id.*)

The ALJ's second hypothetical presented the same restrictions as hypothetical one, but changed it to a light exertional level. (*Id.*) The VE affirmed that the numbers she gave for the same jobs listed in hypothetical one under the light category would satisfy hypothetical two. (*Id.* at 317-18.)

The ALJ's third hypothetical presented the same person who would miss four or more days at work per month and not complete assigned tasks in an eight-hour day, four or more days per month. (Tr. 318.) The VE expressed that this person would be unable to work without special accommodation. (*Id.*)

First, upon examination by Plaintiff's attorney, who presented the VE with an assessment completed by Dr. Yeh, the VE stated those factors would impact her ability to work. (*Id.* at 318-19.) Second, Plaintiff's attorney then showed the VE an assessment form completed by Sharon O'Malley, a physician's assistant, that indicated different work capacities. (*Id.* at 269-70, 319.) The VE opined that based on that combination of work

- 8 -

1 restrictions the Plaintiff would not be able to work. (*Id*. at 319)  Third, the VE was asked to
2 consider the State agency's reviewing physician's indication that Plaintiff was moderately
3 limited in her ability to maintain concentration, persistence and pace, and having restrictions
4 of daily activities.  The VE responded that Plaintiff needs to be able to concentrate, "[s]o if
5 moderately limited means that she cannot do that, then she cannot work." (*Id*.)  Finally, the
6 VE was asked if Plaintiff could sustain employment based on Plaintiff's subjective
7 testimony. (*Id*. at 320.)  The VE stated that based on Plaintiff's testimony she could not
8 sustain work. (*Id*.)

## IV.    THE ALJ'S DECISION

The ALJ evaluated Plaintiff's alleged disability according to the five-step evaluation process set forth in 20 C.F.R. § 416.920.  (*Id*. at 16-23.)  The ALJ first determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 18.) Next, the ALJ found the following severe combination of impairments: degenerative back disorders, fibromyalgia, and an anxiety disorder. (*Id*.)  However, the ALJ concluded that Plaintiff's impairments failed to meet the criteria of the third step. (*Id*.)  This step requires a claimant's impairment(s) to "meet[] or equal[] one of [the SSA's] listings in appendix 1 to subpart P of part 404 of this chapter and meet[] the duration requirement . . . ."  20 C.F R. § 416.920(a)(4)(iii).  Specifically, the ALJ stated that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (*Id*.)

Finally, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform unskilled medium work activity.  The RFC is defined as "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945.  Before determining the RFC, the ALJ first dismissed Plaintiff's testimony and the opinion of the treating physician, finding they lacked credibility and were inconsistent with the record. (Tr. 19-21.)  The ALJ then relied on the opinions of two State agency consulting examiners. (*Id*. at 21.)  The ALJ determined that Plaintiff was capable of lifting/carrying 25 pounds frequently, and 50 pounds occasionally. (*Id*.)  The ALJ further found Plaintiff able to sit, stand, and walk at least six

- 9 -

1 hours in an eight hour workday with some postural restrictions. (*Id.*) Finally, the ALJ found that claimant needs to work in an environment that requires minimal interaction with the general public, her co-workers, and her supervisors. (*Id.*)

Based on the RFC and the testimony of the VE, the ALJ found that although Plaintiff is incapable of performing her past work, she is capable of performing work as a janitor, night cleaner, or an office clerk. (*Id.* at 21-23.) The number of such positions available in Arizona is significant. (*Id.* at 23.) Accordingly, the ALJ held that Plaintiff was not eligible for payments under section 1614(a)(3)(A) of the Social Security Act. (*Id.*)

## V. DISCUSSION

Plaintiff argues in their opening brief ("OB") that the ALJ's decision is not supported by substantial evidence and is founded on multiple errors of law. (OB at 2.) Plaintiff asserts four arguments on appeal: (1) the ALJ improperly rejected the opinion of Dr. Yeh, Plaintiff's treating physician; (2) the ALJ improperly rejected MMHC's opinion, which was a treating source, by failing to address their treatments and assessments, including why the ALJ was rejecting their opinions; (3) the ALJ used opinion evidence contrary to the Commissioner's guidelines; and (4) the ALJ used contradictory opinion evidence. (OB at 2-8.)

### A. Treating Physician Opinion

Plaintiff argues that the ALJ improperly rejected Dr. Yeh's opinion, who was Plaintiff's treating physician. However, a treating physician's opinion can be discounted based on the results and findings of an independent consultative examination. *Batson v. Comm'r*, 359 F.3d 1190, 1194-55 (9th Cir. 2004). The ALJ could reasonably have found Dr. Taylor's opinion that Plaintiff had few restrictions that would limit her residual functional capacity more credible than the opinion of Dr. Yeh.

While it might be improper to reject a treating physician's opinion solely on the basis of a conflicting consultative examination, it can be rejected when considering the record as a whole. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In rejecting Dr. Yeh's opinion, the ALJ also relied on the inconsistencies in Dr. Yeh's own records. Dr. Yeh at times noted Plaintiff's quality of life was improving with treatment, and at other times noted there was

no improvement. Inconsistencies and ambiguities within the treating physicians' own opinion or record can be a specific and legitimate reason for rejecting the opinion. *Matney on behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Furthermore, this Court agrees with Defendant that Dr. Yeh's records contain relatively few objective findings for the extreme limitations he lists. Whereas Dr. Taylor's findings have substantively more objective findings and detailed reasoning. Dr. Yeh's assessment is largely in the form of a checklist. However, a treating physician's opinion is only entitled to minimal weight when it is conclusory, or it is in the form of a checklist and is not supported by objective evidence. *Batson*, 359 F.3d at 1194-55 (9th Cir. 2004). Accordingly, in light of the medical record as a whole, the ALJ did not err by discounting Dr. Yeh's opinion.

### B. Treating Source Opinion

Plaintiff next argues the ALJ improperly rejected MMHC's opinion, which was a treating source, by failing to address MMHC's treatments and assessments, including why the ALJ even rejected their opinions. Plaintiff relies on *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983), which states "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."

In the present case, it is clear that the ALJ's decision did not give specific reasons for discrediting the opinion of MMHC. However, Plaintiff incorrectly analogizes treating source with treating physician. Plaintiff primarily consulted with Sharon O'Malley, a physician's assistant, at MMHC. Furthermore, Plaintiff largely relied on Ms. O'Malley's assessment when questioning the VE as to whether Plaintiff could sustain employment under Ms. O'Malley's listed marked limitations. However, "a physician's assistant's opinion, unlike the opinion of a licensed physician, is not 'an acceptable medical source' for establishing a medically determinable impairment." *Seltz v. Astrue*, 299 Fed.Appx. 666, 668 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1513). In fact, based on the record, no one at MMHC whom Plaintiff consulted with was an acceptable medical source; but rather, their persons were physician's assistants or therapists of some kind, whom are treated as "other sources," and

1    given the weight of lay witnesses. 20 C.F.R. § 404.1513(d).  Accordingly, the ALJ was not
2    required to give specific and legitimate reasons for not crediting the assessments made by
3    MMHC because they were not an acceptable medical source.

### C. Commissioner Guidelines

Plaintiff argues that the ALJ used opinion evidence that was contrary to the Commissioner's guidelines set forth in the Program Operations Manual System ("POMS"). Plaintiff states that POMS § DI 22510.016(C) indicates that the consultative examiner *must* be sent background information on the claimant. Plaintiff notes that the ALJ relied on Dr. Taylor's evaluation, whom expressly acknowledged he did not review claimant's medical records. (Tr. 188.) Defendant argues that POMS § DI 22510.016(C) is an internal policy manual that sets forth guidelines, which *encourage* background information to be supplied to the consultative examiner for review. Defendant argues that POMS § DI 22510.016(C) does not state that a consultative examiner's report must review medical records before an ALJ can rely on that report.

This Court agrees with Defendant that POMS § DI 22510.016(C) is nothing more than an internal set of guidelines that encourage certain actions (i.e., supplying medical records to consultative examiners). They do not explicitly forbid the ALJ from considering a consultative examiner's report if that report breached POMS guidelines. Accordingly, the ALJ properly considered Dr. Taylor's report because POMS § DI 22510.016(C) merely encourages consultant examiners to review the medical records, but does not require it.

### D. Conflicting Opinion Evidence

Finally, Plaintiff argues the ALJ improperly gave controlling weight to the opinion of the psychological State agency reviewing physician, Dr. DeFelice, in spite of her alleged contradictory statements regarding the claimant's concentration. Plaintiff points out that Dr. DeFelice expressed on a Psychiatric Review Technique form ("PRTF") that Plaintiff had moderate difficulties maintaining concentration.(Tr. 132) Plaintiff then alleges this contradicts Dr. DeFelice's report on a Mental Residual Functional Capacity Assessment

Form ("MRFCAF"), where Dr. DeFelice state that Plaintiff could understand, remember and carry out simple tasks and sustain concentration adequately. (Tr. 119.) Inconsistencies in a physician's own opinion can be a specific and legitimate reason for rejecting the opinion. *Sullivan*, 981 F.2d at 1020. However, Defendant argues that there is no contradiction because the forms serve different purposes. Defendant asserts that the PRTF is used to assess whether mental impairment is severe (step two of the sequential evaluation) and meets or equals a listed impairment (step three). Defendant states the PRTF outlines the four broad functional areas known as the B criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). Defendant argues this is consistent with the Commissioner's regulations, Social Security Ruling ("SSR") 96-8p, which indicates that the B criteria are used at steps two and three of the sequential evaluation and should not simply be substituted for an RFC assessment at later steps.

This Court agrees with Defendant that the two forms serve different purposes and evaluate different criteria. "The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad [B criteria categories] . . . ." SSR 96-8p, 61 F.R. 34474, 34477 (1996). *See also Maier v. Comm'r of Soc. Sec.*, 154 F.3d 913, 915 (9th Cir. 1998) (acknowledging that a MRFCAF does not encompass the same criteria evaluated in a PRTF). Therefore, the ALJ properly considered the opinion evidence of Dr. DeFelice on the MRFCAF for the RFC finding while disregarding the earlier PRTF evaluation.

## VI. CONCLUSION

The Court finds that the ALJ did not commit legal error in discrediting Dr. Yeh's opinion, not discussing reasons for rejecting MMHC's opinion, considering Dr. Taylor's testimony even though he did not review records, and in crediting Dr. DeFelice's opinion.

For the reasons stated above,

**IT IS ORDERED** that the decision of the ALJ is affirmed and the Clerk of the Court shall enter judgment accordingly (said judgment shall serve as the mandate in this case).

DATED this 7th day of December, 2009.

James A. Teilborg
United States District Judge